UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE HILL, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE CITY OF ST. LOUIS, MISSOURI, ) <br> a Municipal Corporation, and CHRIS ) <br> HENRICKS, Supervisor, City of St. ) <br> Louis Forestry Division, in his individual ) <br> and official capacities, ) <br> ) <br> Defendants. ) | Case No. 4:05CV00432 AGF |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on Defendants' joint motion for summary judgment.[1] Johnnie Hill, an African-American, filed this action against his former employer, the City of St. Louis; and his former supervisor, Chris Henricks, in his individual and official capacities. Plaintiff claims that when he was under Henricks' supervision, he was subjected to racially disparate treatment and a hostile work environment. Plaintiff alleges that Defendants engaged in a pattern and practice of favoring white employees over black employees, including Plaintiff, when making job assignments and disciplining employees. Plaintiff seeks recovery under 42 U.S.C. § 1981 (Count I); 42 U.S.C. § 1983 (Count II); and Title VII of the Civil Rights

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Act of 1964, 42 U.S.C. § 2000e (Count III). For the reasons set forth below, Defendants' motion shall be granted in part and denied in part.

## BACKGROUND

The record establishes that Plaintiff was hired by the City as a Construction Equipment Operator in the Department of Parks, Recreation, and Forestry on January 31, 1995. Examples of work for this job included such tasks as hauling trash and debris, grinding trees and yard waste to create mulch, and picking up residential trash bags. Defs.' Ex. A. Approximately six months after being hired, Plaintiff was assigned to the Compost Section of the Forestry Division. This section had six equipment operators, of whom Plaintiff and Demond Hobbs were African-American.

In September 2000, Henricks, a white male, became the supervisor of several sections, including the Compost Section. On June 25, August 28, and September 10, 2001, Henricks filed written reports documenting "verbal counselings" he gave Plaintiff for not completing a task as directed, leaving his work assignment without notifying his supervisor, and taking 15 extra minutes for lunch, respectively. Each report stated a follows: "Any repetition of the(se) act(s) or other inability to follow the rules of the organization will result in more severe disciplinary action." Defs.' Ex. C. Plaintiff had never before received any counselings or other form of discipline.

City employees are rated annually; the performance levels are outstanding, proficient, adequate, needs improvement, and unsatisfactory. Plaintiff's supervisor

before Henricks rated Plaintiff as proficient; for the rating period ending January 28, 2001, Henricks also rated Plaintiff as proficient. Pl.'s Ex. 6.

Plaintiff was hospitalized for depression from February 21 to February 25, 2003. Plaintiff reported to hospital personnel that he had not worked since February 2, 2003, because of feelings that he wanted to harm his supervisor, whom he felt had been treating him unfairly for years due to Plaintiff's race, and that he was trying to get Plaintiff to quit his job. The hospital records note that upon admission, Plaintiff had assaultive and homicidal ideation towards his supervisor. Pl.'s Exs. 10A, 11, & 12.

By letter dated May 9, 2003, Plaintiff was informed that a pretermination hearing was scheduled for May 21, 2003. The letter stated that Plaintiff's dismissal was recommended for leaving work without authorization on May 2, 2003; failing to call or report for duty on May 5, 6, and 7, 2003; and being verbally abusive to Henricks when Plaintiff called to report his absence on May 8, 2003. Pl. Ex. 14. By letter dated May 27, 2003, Plaintiff was informed that he would not be dismissed, and that he was transferred, effective June 2, 2003, to the Weed Control Section under a different supervisor. Pl.'s Ex. 15. On June 2, 2003, Henricks completed a rating form for Plaintiff, giving Plaintiff an overall rating of adequate. Pl.'s Ex. 16.

In his deposition taken on August 19, 2005, Plaintiff testified that Henricks gave him less favorable job assignments than those he gave to white employees in the Compost Section; on several occasions asked Plaintiff to work harder than required of white employees; and issued the three verbal warnings against Plaintiff noted above, while

white employees were not written up for comparable or worse behavior. The less favorable job assignments asserted by Plaintiff were: (1) crawling on the ground to clear debris under a large tub used for grinding trees and debris, mechanically loading the tub on an 18-wheeler tractor trailer, and taking it to sites around the City where there had been storm damage; and (2) grinding wet beechwood several times a month, wood which was especially "nasty and slimy and smell[ed] horrible" and which would clog up the tub, requiring the worker to unclog the tub with his hands. Plaintiff testified in his deposition that only he and Hobbs were given these jobs. Pl.'s Dep. at 17-20, 48-51.

The occasions testified to by Plaintiff on which Henricks asked Plaintiff to work more than white employees were an unidentified number of occasions on which Henricks asked Plaintiff to start work early, and several occasions on which Henricks interrupted his lunch break and assigned him a task. Plaintiff testified that after this happened about ten times, he stopped having lunch in the lunchroom. Pl.'s Dep. at 23-28. Plaintiff described the circumstances surrounding the three write-ups noted above, asserting that the write-ups were undeserved and that they led to a proficient rather than outstanding rating, which in turn resulted in a 3% rather than a 5% raise.

Defense counsel asked Plaintiff whether he believed that he was "harassed in any other way than the times you were asked to either begin work early or work while you were in the lunchroom and these three write-ups?" Plaintiff responded, "No." Pl.'s Dep. at 47. Shortly thereafter, Plaintiff testified that Henricks once asked him to wash the truck, at which point a white co-worker stepped in and said, "You know that's not right.

4

That's my job." Pl.'s Dep. at 53-54. Plaintiff acknowledged that after he was transferred from Henricks' supervision, he received a written reprimand for damaging city property and was written up for leaving a loader unattended. Pl.'s Dep. at 14-15.

Defendants argue that they are entitled to summary judgement because none of Plaintiff's allegations constitute an adverse employment action, as required to prevail on a claim of unequal treatment, and because Henricks' alleged conduct was not severe or pervasive enough to constitute harassment or a hostile work environment. Defendants also argue that the facts as alleged by Plaintiff do not establish a municipal policy or custom necessary to hold the City (or, presumably, Henricks in his official capacity) liable on Plaintiff's claims brought under 42 U.S.C. §§ 1981 or 1983.

Defendants argue that Plaintiff's assumption that absent the three write-ups, he would have received an outstanding rating from Henricks in 2001 is speculative. They have submitted the affidavit of Gregory Hayes, who at all relevant times was the Acting Forestry Commissioner for the City, attesting that verbal warnings are not forwarded to the City's Department of Personnel for inclusion in an employee's official personnel file, and that none of the verbal counselings received by Plaintiff "directly resulted" in Plaintiff losing any pay or benefits.

In response, Plaintiff has submitted his own affidavit dated March 27, 2006; the affidavits of Hobbs and two other co-workers, Damon Elmore and Johnnie Mason; and excerpts of Hayes' deposition. Plaintiff attests that his problems at work began after Henricks became his supervisor. He asserts that Henricks harassed the black employees

5

under his supervision, including Plaintiff, on a daily basis by placing unreasonable time limits on black employees to complete an assignment, while allowing white employees to work at their own pace; and raising his voice to and threatening black employees with their jobs in front of other employees, about working faster, while saying nothing to white employees working at the same pace.

Plaintiff states in his affidavit that Henricks would come looking for him and ask him on a daily basis what he was doing, even if it was obvious, and would frequently take Plaintiff off one assignment and give him another and criticize him for not completing the first assignment, and then threaten Plaintiff with insubordination if Plaintiff questioned a direction.  Plaintiff reaffirms his deposition testimony that Henricks assigned Plaintiff and Hobbs the worst jobs in the Compost Section.  Plaintiff adds that when he asked Henricks why he never chose the white employees for these jobs, Henricks smiled or laughed at him and walked away.  Plaintiff attested that Henricks would interrupt Plaintiff and Hobbs during their lunch breaks to assign them work, walking past white employees also on lunch break.

Plaintiff presents his version of events leading to the three verbal counselings noted above, explaining that each was undeserved.  Plaintiff further attests that Henricks told him repeatedly that the three counselings would be remembered and used against Plaintiff when preparing Plaintiff's annual evaluations, and that the counselings resulted in Plaintiff's rating by Henricks for the rating period ending in January 2001 as proficient rather than outstanding, which in turn resulted in a 3% rather than a 5% pay increase.

6

Plaintiff asserts that white employees received ratings of outstanding by Henricks, even though they had received a verbal counseling, a written reprimand, or an eight-hour suspension during the rating period, and the record supports this assertion.

Plaintiff attests that in January 2002, he told Hayes about Henricks' unfair treatment of Plaintiff and Hobbs and that it was causing Plaintiff's stress and depression. Plaintiff attests that Hayes told him that he would approve Plaintiff's transfer out of the Forestry Department if Plaintiff could find a job in another City department. Plaintiff states that he told Hayes that he would be happy to transfer within the Forestry Department under the supervision of a certain supervisor. Plaintiff states that Hayes never investigated his complaints or took any action to correct the situation or permit Plaintiff to transfer until almost a year and a half later. Plaintiff states that when he returned to work in March 2002, after his hospitalization, Henricks' mistreatment and harassment continued, and that Plaintiff's stress began to build up again. On May 2, 2003, Plaintiff reported to work early, and Henricks ordered him to start working, while giving no such orders to the white employees who were there. When Plaintiff refused, Henricks threatened him with a write-up, and Plaintiff told Henricks he was taking emergency sick leave and left work before the start of his shift.

In an excerpt from Hayes' deposition submitted by Plaintiff, Hayes stated that a verbal counseling could affect the employee's annual evaluation. The affidavits of Plaintiff's co-workers largely substantiate Plaintiff's assertions that Henricks treated black employees less favorably on a regular basis. Hobbs attests that Henricks would "harass

7

black employees and write them up for minuscule reasons and then smirk" and that he "harassed, berated and falsely accused" Plaintiff for misconduct on a daily basis. Hobbs further states that Henricks would give black, but not white, employees time limits for assignments, and would follow the black employees around to make sure that they were working, taking photographs of them and watching them with binoculars. Hobbs attests that Henricks frequently interrupted him and Plaintiff during lunch to load a carrier, and at the end of the lunch or afternoon break would indicate to them that it was time to get back to work, whereas these things were not done to the white employees.

Mason, an African-American in a different section who sometimes worked with the Compost Section, attests that Henricks made statements to black employees that they regarded as racist. Elmore, a white co-worker in the Compost Section, attests that Henricks "played favorites with the white employees and tried to make examples out of the African-American employees." Elmore gave several examples of such disparate treatment, and concluded that "it was painfully obvious" to him and his fellow workers that Henricks was lax with white employees and "harassed" black employees.

In reply, Defendants again assert that there is no evidence that Plaintiff suffered an adverse employment action or a hostile work environment while working under Henricks. Defendants argue that Plaintiff should be held to his deposition testimony and not be allowed to utilize affidavits, his own and his co-workers', to expand upon his hostile work environment claim. They note that even the new evidence shows that Plaintiff never heard

Henricks make any racially derogatory comments. Defendants have not submitted an affidavit by Henricks either refuting or explaining Plaintiff's assertions.

## DISCUSSION

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Sallis v. Univ. of Minn., 408 F.3d 470, 475 (8th Cir. 2005). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

9

Catrett, 477 U.S. 317, 322 (1986).  Because discrimination cases often turn on inferences rather than direct evidence, summary judgment should be "cautiously granted" in such cases.  Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir. 2002).  The Court will separately analyze Plaintiff's disparate-treatment claims and hostile work environment claims.  See Sallis, 408 F.3d at 474-77 (analyzing such claims separately).

**Disparate-Treatment Claims**

The Court first notes that claims of employment discrimination based on race, brought under § 1983 and § 1981, are analyzed under the same standards developed in Title VII litigation.  See, e.g., Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005), cert. denied, 126 S.Ct. 1338 (2006); Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 652 (8th Cir. 2003).  Here, because there is no direct evidence of racial discrimination to support Plaintiff's disparate-treatment claims, the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies.[2]  Under this analysis, the employee has the burden of establishing a prima facie case, showing that (1) he is a member of a protected class; (2) he was qualified to perform his duties;  (3) he suffered an adverse employment action; and (4) circumstances give rise to

---

[2] Plaintiff could have also avoided summary judgment by proof of direct evidence of discrimination. Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's actions." Sallis, 408 F.3d at 475 n.6 (citation omitted).  Plaintiff failed to do so.

10

an inference of discrimination, as similarly situated employees, who are not members of the protected group, were treated more favorably. Sallis, 408 F.3d at 475. 2005).

If the employee establishes a prima facie case, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the challenged action. If the employer meets that burden, the employee may prevail by proffering evidence that the employer's reason was a pretext for intentional discrimination. Id.

Here, the focus is on whether Plaintiff has established a prima facie case, more specifically, on whether, viewing the evidence in the light most favorable to Plaintiff, he has established that he suffered an "adverse employment action." The contours of this element of a Title VII prima facie case are currently being considered by the United States Supreme Court in a case from the Sixth Circuit, White v. Burlington Northern & Santa Fe Railway Co., 364 F.3d 789 (6th Cir. 2004), cert. granted, 126 S. Ct. 797 (Dec. 5, 2005) (oral argument held on April 17, 2006). White involves a retaliation claim under Title VII, which requires that a plaintiff establish that he suffered an adverse employment action.

In Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), the Supreme Court stated that "a tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761. As recently articulated by the Eighth Circuit, "[a]n adverse employment action is a tangible

11

change in working conditions that produces a material employment disadvantage. Mere inconvenience without any decrease in title, salary, or benefits" or that "results only in minor changes in working conditions does not meet this standard." Wedow v. City of Kansas City, Mo., 442 F.3d 661, 671 (8th Cir. 2006) (citation omitted). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." Sallis, 408 F.3d at 475; see also Spears v. Mo. Dep't of Corr. & Human Resources, 210 F.3d 850, 853 (8th Cir. 2000) (en banc) (citations omitted).

Performance Ratings and "Verbal Counselings"

The Court first concludes as a matter of law that Plaintiff's rating of "proficient" by Henricks did not constitute an adverse employment action. A poor performance rating does not in itself constitute an adverse employment action, because it has no tangible effect upon the recipient's employment; an unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. Baucom v. Holiday Companies, 428 F.3d 764, 768 (8th Cir. 2005); Spears, 210 F.3d at 854 (lowering of plaintiff's performance rating from "highly successful" to "successful" was not an adverse employment action where plaintiff presented no evidence that employer subsequently used the evaluation to plaintiff's detriment; cf. Brooks v. Ameren UE, 345 F.3d 986, 988 (8th Cir. 2003) (Title VII plaintiff's opinion that he should have received higher scores in a

promotion test than the candidate promoted was "irrelevant, as it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance").

Similarly, the three "verbal counselings" did not rise to the level of an adverse employment action, as Plaintiff has not presented sufficient evidence, beyond his own speculation, that the counselings resulted in a lower pay increase. "[F]ormal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII." Powell v. Yellow Book USA, Inc., ___ F.3d ___, No. 05-2465, 2006 WL 1071855 at *4 (8th Cir. 2006) (three written reprimands by management did not constitute adverse employment action where plaintiff could point to no cut in her pay, no reduction in her hours, nor any other significant change to the conditions of her employment); Singeltary v. Mo. Dep't of Corr., 423 F.3d 886, 892 n.5 (8th Cir. 2005).

Job Assignments

Plaintiff also claims that Henricks assigned Plaintiff (and Hobbs) to less desirable jobs. The Eighth Circuit has stated that "[u]ndesirable work assignments are not adverse employment actions." Southard v. Tex. Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997), cited with approval in Tuggle v. Mangan, 348 F.3d 714, 721-22 (8th Cir. 2003). This precise question is before the Supreme Court in White. In that case, a female worker was reassigned to a "more arduous and 'dirtier'" job, which she claimed was in retaliation for activity protected by Title VII. White, 364 F.3d at 789. The appellate court

held that the reassignment was an "adverse employment action," and the Supreme Court granted certiorary review of that holding. Under current Eighth Circuit law, however, the Court must conclude that the job assignments in question here, which were undisputedly within Plaintiff's job description and which did not involve a change in pay, position, or benefits, did not constitute an adverse employment action.

In sum, the Court concludes that Plaintiff has not presented sufficient evidence of an adverse employment action to withstand Defendants' motion for summary judgment on his disparate-treatment claims. Plaintiff's attempt to state a "pattern or practice" claim also fails in the absence of statistical or other evidence to support such a claim. See Tademe v. St. Cloud State Univ., 328 F.3d 982, 988 n.4 (8th Cir. 2003).

**Harassment/Hostile Work Environment Claims**

To establish a prima facie case on his harassment claims, Plaintiff must show that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; and (4) the harassment affected a term, condition, or privilege of employment. Ottman v. City of Independence, Mo., 341 F.3d 751, 759-60 (8th Cir. 2003) (citation omitted). "For harassment to affect a condition of employment the conduct must be severe as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Singletary, 423 F.3d at 892 (8th Cir. 2005). Relevant factors for determining whether conduct rises to the level of harassment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

14

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Id.

Here, viewing all the evidence now in the record, including the affidavits submitted by Plaintiff, in the light most favorable to Plaintiff, the Court concludes that a jury question is presented on whether Plaintiff was subjected to a racially hostile work environment while under Henricks' supervision.  This is a close question for the Court.  Although Plaintiff does not assert that Henricks ever made any explicitly racial comments, Plaintiff does assert less-favorable and demeaning treatment of Plaintiff on a frequent and continuous basis, overtly based upon his race, for almost three and a half years.  Plaintiff has presented evidence from which a jury could conclude that Henricks' alleged conduct interfered with Plaintiff's work performance and well-being.  The Court believes a jury question is also presented on whether such a reaction to Henricks' alleged conduct would be objectively reasonable.  "While there is no mathematically precise test for determining when conduct in the workplace moves beyond merely offensive and into the realm of illegality, subject to some policing at the outer bounds, it is for the jury to weigh [the] factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Baker v. John Morrell & Co., 249 F.Supp.2d 1138, 1159 (N.D. Iowa 2003) (quoted cases omitted).

Accordingly, the Court must determine whether Plaintiff's affidavit, as well as those of Hobbs, Mason, and Elmore, may properly be considered by the Court.  In

Marathon Ashland Petroleum, LLC v. International Brotherhood of Teamsters, 300 F.3d 945, (8th Cir. 2002) cited by Defendants, the Eighth Circuit stated as follows:

> It is well established that parties to summary judgment cannot create sham issues of fact in an effort to defeat summary judgment and that a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. This is so because [o]therwise, any party could head off summary judgment by supplanting previous depositions <u>ad hoc</u> with a new affidavit, and no case would ever be appropriate for summary judgment.

<u>Id.</u> at 951 (citations omitted).

Here, although Plaintiff's affidavit can, to a certain extent, be viewed as contradicting his deposition statement quoted above that he had no further allegations of harassment, from a review of the deposition as a whole, the Court does not believe that his affidavit, or those of his co-workers, can fairly be characterized as comprising a "sudden and unexplained revision" of Plaintiff's deposition testimony. The Court believes that the new evidence represents an expansion of, rather than a contradiction to, the earlier deposition testimony. <u>Cf. id.</u> (union representative's testimony following a break during his deposition that employer had agreed to arbitrate a grievance if union withdrew it from collective bargaining negotiations was not a mere clarification of his earlier testimony that he had offered to withdraw the grievance to allow it to proceed independently of negotiations; change constituted an unexplained revision of earlier testimony and thus only earlier testimony was considered in summary judgment determination); <u>Wilson v. Westinghouse Elec. Corp.</u>, 838 F.2d 286, 289 (8th Cir. 1988) (plaintiff's affidavit, filed after defendant moved for summary judgment, attesting that he believed his employment

16

would continue at a reduced salary indefinitely "[flew] in the face of" his prior deposition testimony that he received a termination letter, and thus affidavit could not be used by plaintiff to create an issue of fact). As recognized by these cases, "district courts must exercise extreme care not to take genuine issues of fact away from juries." Wilson, 838 F.2d at 289.

**City's Liability**

If a Title VII plaintiff establishes that a supervisor with authority over him created a hostile work environment, the employer can be vicariously liable. Burlington Indus., Inc., 524 U.S. at 763. A defending employer, however, can raise an affirmative defense to liability by showing that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id. at 765; Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 629 (8th Cir. 2005).

Here, as stated above, Plaintiff attests that in January 2002, he told Hayes about Henricks' unfair treatment of Plaintiff and Hobbs, and that this was leading to Plaintiff's feelings of stress and depression. Plaintiff attests that Hayes never investigated his complaints or took any action to correct the situation or permit Plaintiff to transfer until almost a year and a half later. The Court concludes that a jury question is presented on whether the City's response to Plaintiff's complaints was adequate to shield it from liability.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** at to Plaintiff's disparate-treatment claims and **DENIED** as to Plaintiff's hostile work environment claims. [Doc. #16]

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of May, 2006.